IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| **Nestlé USA, Inc.,**<br>   1812 N Moore St.,<br>   Arlington, VA 22209, | )<br>)<br>)<br>) | CIVIL ACTION NO. |
| Plaintiff, | )<br>) | **JURY TRIAL**<br>**DEMANDED** |
| v. | )<br>) | |
| **Danone North America, LLC,**<br>   12002 Airport Way<br>   Broomfield, CO 80021, | )<br>)<br>)<br>) | |
| Defendant. | )<br>) | |

## COMPLAINT

Plaintiff Nestlé USA, Inc. alleges as follows, upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other matters:

### NATURE OF THE ACTION

1. This is a civil action for trade dress infringement and unfair competition under federal, state, and common law.

2. Nestlé is a leading maker of coffee creamers, including plant-based creamers such as almond creamers. Nestlé invests significant resources in developing and advertising unique branding and packaging designs for its creamers to ensure that consumers can easily identify its market-leading products with ease and confidence. Seeking to trade off that association, and freeride on the goodwill that Nestlé has worked hard to build in its creamers, Danone recently

modified the packaging design for its competing creamers to copy and mimic the elements of Nestlé's packaging design, *e.g.*:

**Nestlé's Creamer Packaging**     **Danone's Creamer Packaging**

    

Danone easily could have used different design elements for its packaging, as it has done in the past.  But it chose to copy the market leader.  Danone's intent is obvious and inescapable:  to gain an instant marketplace boost and acceptance by mimicking Nestlé's packaging design and elements.  Nestlé thus seeks to enjoin Danone's use of its copycat packaging designs and to recover actual damages, Danone's profits, and other relief, including attorneys' fees and costs.

## PARTIES AND JURISDICTION

3.  Plaintiff Nestlé USA, Inc. is a Delaware corporation with its principal place of business at 1812 N Moore St., Arlington, Virginia 22209.

4.  Defendant Danone North America, LLC is a Delaware company with its principal place of business at 12002 Airport Way Broomfield, Colorado 80021.

5.  This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. §§ 1121 and 28 U.S.C. §§ 1331 and 1338(a) and (b).  Because Nestlé is a citizen of the State of Virginia, Defendant is a citizen of the State of Colorado, and the matter in controversy

exceeds $75,000 exclusive of interest and costs, the Court also has jurisdiction under 28 U.S.C. § 1332. The Court has supplemental jurisdiction over Nestlé's state-law claims pursuant to 28 U.S.C. § 1367(a) because they are substantially related to its federal claims and arise out of the same case or controversy.

6. This Court has personal jurisdiction over Danone because it has purposefully availed itself of the privilege of conducting business in Virginia. Danone offers, markets, promotes, and sells its infringing products that are the subject of this lawsuit to consumers located in Virginia. Moreover, Nestlé's intellectual property is within the District and Nestlé is being harmed in this District from Danone's infringing activities.

7. Venue lies in this District pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events giving rise to Nestlé's claims occurred in this District (and elsewhere) and because the property that is the subject of the action—*i.e.,* Nestlé's asserted intellectual property—is situated in this District, where Nestlé maintains its U.S. headquarters, principal place of business, and creamer business.

## NESTLÉ AND ITS NATURAL BLISS PRODUCTS

8. Nestlé is an affiliate company of the Nestlé Group—one of the world's largest, most successful, and well-known food and beverage companies. Through its wide assortment of product offerings, Nestlé is committed to enhancing quality of life and contributing to a healthier future for individuals, families, and communities.

9. In furthering its commitment, since as early as 2011, Nestlé has offered a line of creamers under the Natural Bliss brand. Natural Bliss creamers are available in dairy and plant-based varieties (including oat, almond, cashew, and coconut) in various flavors, including Sweet Cream.

10. Since the inception of the Natural Bliss brand and as early as 2011, Nestlé has extensively used and promoted a packaging design with a distinct and uniform look and feel across its Natural Bliss line of creamers—to ensure consistent branding and to distinguish its creamers from others in the marketplace.

**NESTLÉ'S NATURAL BLISS PACKAGING DESIGN TRADE DRESS**

11. The overall appearance of the Natural Bliss packaging design includes at least the following features—discussed and shown below—the combination of which creates a distinctive trade dress that has come to be uniquely associated with Nestlé:

    a. The cap and body of the bottle in the same color, *e.g.*:



b. A color band covering the entirety of the bottle's neck, listing the flavor variety, *e.g.*:



Color Band at Neck

c. Brand positioned at the front upper center of the body of the bottle, *e.g.*:



Brand

Body

5

    d.  Flavor icon positioned at the front lower center of the body of the bottle,

*e.g.*:



  12.  The combination of the (a) existence and position of the neckband and (b) position of the "natural bliss" logo as described above is the subject of valid and subsisting U.S. Registration No. 5510935, a copy of which is attached as Exhibit A (the "Registered Trade Dress"):



13. The Registered Trade Dress is owned by Société des Produits Nestlé, S.A., who has licensed the use of this registration and other related intellectual property exclusively to Nestlé in the United States with the right to enforce the licensed rights against third parties.

### NESTLÉ SALES AND PROMOTION OF ITS NATURAL BLISS TRADE DRESS

14. Nestlé's Natural Bliss creamers—identified by the Natural Bliss Trade Dress—have enjoyed substantial commercial success.

15. Nestlé's Natural Bliss creamers are sold through a variety of retail means, including regional and national online and brick-and-mortar stores, like *Walmart*, *InstaCart*, *Target*, *FreshDirect*, *Safeway*, *Amazon*, *Sam's Club*, *Harris Teeter*, *HyVee*, *Giant*, *Food Lion*, *Sprouts*, and *ShopRite*.

16. Nestlé has advertised and promoted its Natural Bliss creamers through virtually every available type of media, including its website (www.naturalbliss.com), print, television,

coupons, store displays, and social media (*e.g.*, *Facebook*, *Twitter*, *Instagram*, and *Pinterest*). A few examples of Nestlé's advertising and promotional efforts are shown below:

  









17. Each year, Nestlé spends millions of dollars advertising and promoting its Natural Bliss creamers with the Natural Bliss Trade Dress.

18. As a result of its distinctive nature and strength, use across Nestlé's Natural Bliss creamer line, significant commercial success, widespread advertising, and long-standing and extensive publicity, Nestlé's Natural Bliss Trade Dress is widely known and recognized.

**DANONE'S WRONGFUL ACTIVITIES**

19. As recent as January 2017, Danone offered a line of almond-based coffee creamers in a carton, like the one shown below.



20. Since then, Danone has updated the packaging of its almond creamers to look progressively more like Nestlé's Natural Bliss packaging, *e.g.*:

**Nestlé's Natural Bliss Trade Dress**             **Danone's Packaging**

   

21. Most recently, Danone modified the packaging for its almond creamers to come even closer to the Nestlé Natural Bliss packaging (the "Unauthorized Packaging"), *e.g.*:



11

22.     Danone's Unauthorized Packaging conveys the same commercial impression as Nestlé's Natural Bliss Trade Dress by incorporating many of the same elements, *e.g.*:

    a.     The cap and body of the bottle in the same color, e.g.:

**Nestlé's Natural Bliss Trade Dress**     **Danone's Unauthorized Packaging**

  

    b.     A color band covering the entirety of the bottle's neck, listing the flavor variety, *e.g.*:

**Nestlé's Natural Bliss Trade Dress**     **Danone's Unauthorized Packaging**

  

12

  c. Brand positioned at the front upper center of the body of the bottle, *e.g.*:

**Nestlé's Natural Bliss Trade Dress**  **Danone's Unauthorized Packaging**

 

  d. Flavor icon positioned at the front lower center of the body of the bottle, *e.g.*:

**Nestlé's Natural Bliss Trade Dress**  **Danone's Unauthorized Packaging**

 

13

23. Like Nestlé, Danone uses its Unauthorized Packaging across an assortment of flavors, as shown below.

   

24. Danone's almond creamers compete directly with Nestlé's Natural Bliss creamers, are sold through the same retailers (including *HyVee*, *InstaCart*, *Giant*, *Target*, *Safeway*, *Food Lion*, and *Sprouts*), and are even sold on the same shelves.

25. Danone's and Nestlé's creamers are also advertised the same ways, including via in-store displays, online, and through social media.

26. Nestlé objected to Danone's use of the Unauthorized Packaging via demand letters on August 31, 2020 and October 2, 2020, but Danone has refused to stop its unauthorized uses.

**INJURY TO NESTLÉ AND THE PUBLIC**

27. Danone's uses of the Unauthorized Packaging are likely to cause confusion, mistake, and deception as to the source or origin of Danone's products, and are likely to falsely

14

suggest a sponsorship, connection, or association between Danone, its creamers, and/or its commercial activities with Nestlé, its Natural Bliss Trade Dress, and/or its creamers.

28. Danone's acts, as described above, have damaged and irreparably injured and, if permitted to continue, will further damage and irreparably injure Nestlé and its Natural Bliss Trade Dress.

29. Danone's acts, as described above, have damaged and irreparably injured and, if permitted to continue, will further damage and irreparably injure the public, who has an interest in being free from confusion, mistake, and deception.

30. Danone has acted knowingly, willfully, in reckless disregard of Nestlé's rights, and in bad faith, as evidenced in part by Danone's obvious copying and continued use of the Unauthorized Packaging in the face of Nestlé's objection.

**FIRST CLAIM FOR RELIEF**
**Trade Dress Infringement, False Designation**
**of Origin, Passing Off, and Unfair Competition**
**Under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)**

31. Nestlé repeats and re-alleges each and every allegation set forth in Paragraphs 1 through 30 of this Complaint.

32. Nestlé's Natural Bliss Trade Dress is inherently distinctive and acquired secondary meaning before Danone's use of the Unauthorized Packaging based on, among other things, extensive nationwide use, promotion, marketplace success, and recognition.

33. Danone's uses of the Unauthorized Packaging, as described above, are likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of Danone, its goods and services, and/or its commercial activities by or with Nestlé, and thus constitute trade dress infringement, false designation of origin, passing off, and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## SECOND CLAIM FOR RELIEF
### Trade Dress Infringement Under
### Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)

34. Nestlé repeats and realleges each and every allegation set forth in Paragraphs 1 through 33 of this Complaint.

35. Danone's uses in commerce of unauthorized reproductions, copies, and colorable imitations of Nestlé's Registered Trade Dress in connection with the offering for sale and advertising of goods are likely to cause confusion, or to cause mistake, or to deceive, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

## THIRD CLAIM FOR RELIEF
### Trade Dress Infringement and Trademark Infringement
### Under Virginia Code § 59.1-92.12

36. Nestlé repeats and realleges each and every allegation set forth in Paragraphs 1 through 35 of this Complaint.

37. Danone's unauthorized uses of reproductions, copies, or colorable imitations of Nestlé's Natural Bliss Trade Dress in connection with the sale, offering for sale, distribution, or advertising of goods in a manner likely to cause consumer confusion, mistake, or deception as to the source or origin of Danone, its trade dress, or its products, constitute trademark infringement under Virginia Trademark and Service Mark Act § 59.1-92.12, *et seq.*

38. Danone has committed the acts described above with knowledge of and intent to cause confusion or mistake or to deceive.

## FOURTH CLAIM FOR RELIEF
### Trade Dress Infringement, Trademark Infringement,
### and Unfair Competition Under Virginia Common Law

39. Nestlé repeats and realleges each and every allegation set forth in Paragraphs 1 through 38 of this Complaint.

40. Danone's actions, as described above, are likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of Danone, its products, and/or its commercial activities by or with Nestlé such that Danone's acts constitute infringement of Nestlé proprietary rights in its Natural Bliss Trade Dress, misappropriation of Nestlé's goodwill in that Trade Dress, and unfair competition under Virginia common law.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Nestlé respectfully demands a trial by jury on all issues properly triable by a jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, Nestlé respectfully requests that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief, including the following:

A. An Order declaring that Danone's uses of the Unauthorized Packaging infringe Nestlé's Natural Bliss Trade Dress and Registered Trade Dress and constitute unfair competition under federal and state law, as detailed above;

B. A permanent injunction enjoining Danone and its employees, agents, partners, officers, directors, owners, shareholders, principals, subsidiaries, related companies, affiliates, distributors, dealers, and all persons in active concert or participation with any of them:

1. From using, registering, or seeking to register the Unauthorized Packaging in any form, including in connection with any other wording or designs, and from using any other trade dresses, logos, designs, designations, or indicators that are confusingly similar to Nestlé's Natural Bliss Trade Dress and Registered Trade Dress;

2. From representing by any means whatsoever, directly or indirectly, that Danone, any products with the Unauthorized Packaging, or any activities undertaken by

17

Danone, are associated or connected in any way with Nestlé or sponsored by or affiliated with Nestlé in any way; and

      3.    From assisting, aiding, or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs B(1)-(2).

    C.    An Order directing Danone to destroy all products, packaging, signage, advertisements, promotional materials, stationery, forms, and/or any other materials and things that use, contain, or bear the Unauthorized Packaging;

    D.    An Order directing Danone to, within thirty (30) days after the entry of the injunction, file with this Court and serve on Nestlé's attorneys a report in writing and under oath setting forth in detail the manner and form in which Danone has complied with the injunction;

    E.    An Order requiring Defendant to account for and pay to Nestlé any and all profits arising from the foregoing acts, and increasing such profits, in accordance with 15 U.S.C. § 1117 and other applicable laws;

    F.    An Order requiring Defendant to pay Nestlé damages in an amount as yet undetermined (and including prejudgment and post-judgment interest) caused by the foregoing acts, and trebling such damages in accordance with 15 U.S.C. § 1117 and other applicable laws;

    G.    An Order requiring Defendant to pay Nestlé all its litigation expenses, including reasonable attorneys' fees and the costs of this action pursuant to 15 U.S.C. § 1117 and other applicable laws;

    H.    An Order requiring Defendant to pay Nestlé punitive damages for trademark infringement and unfair competition under Virginia common law; and

    I.    Other relief as the Court may deem appropriate.

| | |
|---|---|
| Dated: March 5, 2021 | Respectfully submitted,<br><br>/s/ *Anna B. Naydonov*<br>Anna B. Naydonov (Bar No. 80101)<br>Douglas A. Rettew<br>(*pro hac vice* application forthcoming)<br>Sydney English<br>(*pro hac vice* application forthcoming)<br>FINNEGAN, HENDERSON, FARABOW,<br>   GARRETT & DUNNER, L.L.P.<br>901 New York Avenue, N.W.<br>Washington, D.C. 20001-4413<br>(202) 408-4000 (phone)<br>(202) 408-4400 (fax)<br><br>Email: anna.naydonov@finnegan.com<br>Email: doug.rettew@finnegan.com<br>Email: sydney.english@finnegan.com<br><br>*Attorneys for Nestlé USA, Inc.* |